UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 12-305(1) (DSD)

United States of America,

       Plaintiff,                              **ORDER**

v.

James Robert Carlson,

       Defendant.

    Surya Saxena, Assistant United States Attorney, United States Attorney's Office, 300 S. Fourth St., Minneapolis, MN 55415, Attorney for Plaintiff.

    Deborah Ellis, Ellis Law Office, 101 E. Fifth St., Suite 1500, St. Paul, MN 55101, Attorney for Defendant.

This matter is before the court upon remand by the Eighth Circuit Court of Appeals to hold an evidentiary hearing and develop the record on defendant James Robert Carlson's claims of ineffective assistance of counsel in his petition under 28 U.S.C. § 2255. Based on the evidence adduced at the evidentiary hearing, the parties' post-hearing briefing, a review of the file, record, and proceedings herein, and for the following reasons, the court denies Carlson's § 2255 motion and denies a certificate of appealability.

## BACKGROUND

On October 7, 2013, a jury convicted Carlson of multiple counts of violating the Food, Drug, and Cosmetic Act (FDCA) and the Controlled Substances Analogue Act and engaging in transactions in property derived from unlawful activity. The court sentenced him to 210 months' imprisonment, and the Eighth Circuit affirmed.

At trial, Carlson was represented by Randall Tigue, who previously provided legal advice to Carlson concerning his business. According to Carlson, Tigue advised him that the products he was selling were legal. Apparently aware of Tigue's previous representation of Carlson, prosecutors filed a motion in limine to preclude defendants from raising the advice-of-counsel defense during trial. See ECF No. 258 at 13-14. Tigue, on Carlson's behalf, replied that he did not intend to raise an advice-of-counsel defense. ECF No. 280 at 7. At the pre-trial conference, John Markham, counsel for one of Carlson's co-defendants, indicated that none of the defendants intended to raise the advice-of-counsel defense. Hr'g Tr. dated Sept. 16, 2013, ECF No. 364, at 131:6-10. Carlson maintains that he was unaware of the possibility of raising the defense and that he did not knowingly waive the defense.

After his direct appeal concluded, Carlson moved to vacate, set aside, or correct his sentence arguing that Tigue's failure to raise the advice-of-counsel defense was a result of a conflict of interest created by his prior representation. Specifically, Carlson argued that Tigue did not raise the advice-of-counsel defense because that would have required him to testify to substantiate the defense, which would have precluded him from representing Carlson at trial. Carlson alleged that Tigue's financial interest in remaining as counsel caused Tigue not to raise the advice-of-counsel defense.

The court disagreed, concluding that Carlson had failed to provide factual support for his claim. Carlson appealed and the Eighth Circuit remanded the matter instructing the court to hold an evidentiary hearing to develop the record with respect to Carlson's ineffective assistance of counsel claim. ECF No. 555. The court held an evidentiary hearing on July 9, 2019, and the parties thereafter submitted post-hearing briefs. As discussed below, the evidence adduced at the hearing did not alter the court's determination that Tigue was not constitutionally ineffective in failing to assert the advice-of-counsel defense.

**DISCUSSION**

**I. Standard**

Generally, to establish a claim of ineffective assistance of counsel, a defendant must meet both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that his counsel's performance was so deficient that it fell below the level of representation guaranteed by the Sixth Amendment. Id. at 687. Second, he must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

Prejudice is presumed when a defendant shows that (1) his counsel had an actual conflict of interest at trial that (2) adversely affected his counsel's performance. Covey v. United States, 377 F.3d 903, 907 (8th Cir. 2004)(citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). The Eighth Circuit has not applied the Cuyler standard to attorney conflicts other than a lawyer's representation of multiple defendants, however. Indeed, the Eighth Circuit has noted in dicta that the Cuyler standard should be limited to instances of multiple representation. See Caban v. United States, 281 F.3d 778, 782 (8th Cir. 2002)("We believe there is much to be said in favor of holding that Cuyler's

rationale ... does not apply outside the context of a conflict between codefendants or serial defendants."); see also Mickens v. Taylor, 535 U.S. 162, 174-75 (2002)("[T]he language of [Cuyler] itself does not clearly establish, or indeed even support, such expansive application [of Cuyler to other types of attorney conflicts.]"). Even assuming that Cuyler applies to the type of attorney conflict alleged by Carlson, however, his claim fails.

Carlson argues that he need not show that the conflict adversely affected Tigue's performance because it constitutes structural error. As already determined in the previous order, the conflict of interest alleged by Carlson does not qualify as a structural error. ECF No. 550 at 4. Carlson therefore must show that the conflict of interest adversely affected Tigue's performance.

**II. Adverse Effect**

In order to show that Tigue's alleged conflict of interest[1] adversely affected his performance, Carlson must (1) "identify a plausible alternative defensive strategy or tactic that ... defense counsel might have pursued;" (2) "show that the alternative

---

[1] As stated in the previous order, the court assumes, without deciding, that Tigue's financial interest in defending Carlson at trial constitutes an actual conflict of interest.

strategy was objectively reasonable under the facts of the case;" and (3) "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Covey, 377 F.3d at 908 (quoting Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001)(en banc), aff'd, 535 U.S. 162 (2002)). Carlson contends that Tigue failed to present a meritorious advice-of-counsel defense at trial.

To successfully assert an advice-of-counsel defense, a defendant must show that he: "(i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006).

The parties agree that the advice-of-counsel defense applies to the FDCA counts (counts 1-17) but not to the analogue and other counts in the indictment.[2] Accordingly, the court will focus on whether the evidence supports a finding that Carlson had a viable advice-of-counsel defense as to the FDCA counts. The evidence

---

[2] The court rejects Carlson's argument that the defense also applies to the conspiracy to distribute controlled substance analogues count (count 21) because willfulness is not an element of that crime as it is under the FDCA. Therefore, Carlson's alleged defense that he could not have acted willfully given Tigue's advice does not apply to that count.

6

adduced at the evidentiary hearing establishes that he did not.

Carlson argues that Tigue should have raised the advice-of-counsel defense given Tigue's consistent and repeated private and public statements that Carlson's sale of synthetic drugs was legal, and that he failed to do so because of his financial interest in remaining counsel. But the record establishes, by Carlson's own admission, that Carlson did not seek advice from Tigue regarding the FDCA before the indictment:

> Q. Okay. Did you receive any advice from Mr. Tigue about the Food, Drug and Cosmetic Act before the indictment?
>
> A. Before that? No.

Evid. Hr'g Tr., ECF No. 581, at 149:12-14. Tigue likewise testified that he did not provide Carlson with advice regarding the FDCA before Carlson started selling the products identified in the indictment. Id. at 41:1-43:21; see also id. 67:21-68:1 (confirming that he did not discuss the FDCA with Carlson before the indictment); id. at 75:15-23 (same). Given the fact that Carlson did not seek advice regarding the FDCA, he cannot have relied on such advice as required to assert an advice-of-counsel defense.

Carlson argues that he need not have specifically referenced the FDCA in his discussions with Tigue for the defense to apply. Even if true, the record does not support a finding that Carlson

7

disclosed detailed information regarding labeling and branding to Tigue, which is the basis for the FDCA convictions. Carlson points to a civil complaint filed by Tigue just before the indictment which alleges that Carlson was "entitled to rely upon the manufacturers' testing, representations, and obligations" under the FDCA "to form a good faith belief that a given substance [did] not need to have a special label." Evid. Hr'g Ex. 22 ¶ 25(h). But a bald assertion in a civil complaint is insufficient to establish that Carlson specifically sought Tigue's advice with respect to the FDCA while he was selling the products or, more critically, that Carlson relied on Tigue's advice after fully disclosing to him all material facts relating to the labeling of the products. Likewise, Tigue's public statements that Carlson was selling legal products are insufficient to establish the necessary elements of the defense; they simply reflect Tigue's zealous advocacy.

Even if the broader issue relating to the legality of the products themselves were at issue – i.e., whether the substances were analogues - the record does not establish that Carlson fully disclosed all material facts to Tigue before seeking advice. To the contrary, although it appears that Tigue and Carlson may have generally discussed the products at issue, the record does not

support a finding that Carlson provided Tigue with specific and detailed information about those products. Absent such information, Carlson cannot be deemed to have fully disclosed all material facts to Tigue in an effort to secure legal advice. Further, Tigue credibly testified that he never advised Carlson as to whether the products were analogues because (1) he did not have the requisite scientific expertise to do so, and (2) he did not want to risk being included as a defendant in a criminal case based on such advice. Evid. Hr'g Tr. at 58:24-25, 59:19-60:16.

As a result, the evidentiary hearing conclusively established that Carlson did not have a viable advice-of-counsel defense and that Tigue was not constitutionally ineffective in failing to raise the defense at trial.

**III. Certificate of Appealability**

To warrant a certificate of appealability, a defendant must make a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2). A "substantial showing" requires a petitioner to establish that "reasonable jurists" would find the court's assessment of the constitutional claims "debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). As discussed above, the court is convinced that Carlson's claims do not entitle him to relief and that reasonable

9

jurists would not differ on the result. A certificate of appealability is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to vacate, set aside, or correct sentence [ECF No. 527] is denied; and

2. Pursuant to 28 U.S.C. § 2253, the court denies a certificate of appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 7, 2019

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court